**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**BEVERLY TAYLOR, Individually
and as Next Best Friend of C.M.C,
a Minor Child,**

                                    **Plaintiffs,**

        **v.**                                              **1:04-cv-1127-WSD**

**THE CITY OF ATLANTA
POLICE DEPARTMENT, et al.,**

                                    **Defendants.**

## ORDER

    This matter is before the Court on Defendants Atlanta Board of Education[1],

Delphia Young and Larry Kinsey's (the "School Defendants") Motion for

Summary Judgment [32] and Defendants City of Atlanta Police Department, W. I.

Green and Brad McWhorter's (the "City Defendants") Renewed Motion for

Summary Judgment [38].[2]

---

    [1]  Plaintiffs alternatively refer to the Atlanta Board of Education as the Atlanta
Independent School System.

    [2]  Also before the Court is Plaintiffs' Motion for Extension of Time [40].
Plaintiffs request an extension of time until July 20, 2005, to file responses to
Defendants' motions for summary judgment.  The Court does not condone
Plaintiffs' failure to request an extension prior to the deadline for filing their

**I.      BACKGROUND**

Plaintiff CMC[3] was a fourteen-year old, ninth-grade student at North Atlanta High School during the 2003-2004 school year.  (School Defs.' Statement of Material Facts ("SUF") ¶ 1.)  North Atlanta High School, operated by the Atlanta Independent School System, has a population of approximately 1,250 students. (Young Dep. at 6.)  The school has two magnet programs, including the program for international studies in which Plaintiff participated.  (Young Dep. at 8.)

Defendant Young has been the principal at North Atlanta High School since 2001.  (Young Dep. at 6.)  Defendant Kinsey is an assistant principal at the school. Defendant Kinsey is responsible for monitoring the facilities at North Atlanta, and for supervising several City of Atlanta Police Department officers hired by the school, including Defendant Officer Green and his supervisor, Defendant Detective McWhorter.  (School Defs.' SUF ¶¶ 1-3; Green Dep. at 26-27.)

---

responses, but grants *nunc pro tunc* Plaintiffs' motion.  The Court will consider Plaintiffs' responses.

[3]  Because of the age of Plaintiff and the sensitivity of the underlying allegations, the Court refers to her by her initials "CMC" or "Plaintiff."

At the beginning of the 2003-2004 school year, Plaintiff met NB[4], a sixteen-year old student at the school.[5]  (School Defs.' SUF ¶ 4.)  Plaintiff and NB spent considerable time together at school, and considered themselves boyfriend and girlfriend.  (Id. ¶ 5.)

On September 29, 2003, after her gym class, Plaintiff returned to the locker room at North Atlanta High School.  Because Plaintiff had to run laps at the end of her gym class, her classmates had already left the locker room to go to lunch, and she was alone at the locker room.  (Pl. Dep. at 32-33.)  Plaintiff claims NB was waiting for her outside the locker room, and she asked him to wait for her outside the room while she went inside to change her clothes.  (School Defs.' SUF ¶ 7.)  Plaintiff testifies this was not unusual because NB frequently met Plaintiff between her classes to walk her to her next class.  (Pl. Dep. at 28.)

Plaintiff claims that several minutes after she entered the locker room, NB came in and they began to hug and kiss each other.  (School Defs.' SUF ¶¶ 8-9.)

---

[4]  The Court also will refer to NB by his initials because of his age and the seriousness of the allegations.

[5]  Plaintiff contests NB's age, admitting only that NB told Plaintiff he was sixteen, but that "[h]is age is unconfirmed and has been given as 17 or 18."  (Pls.' Resp. to School Defs.' SUF ¶ 4.)  Plaintiff has not provided the Court with any citation to the record for this assertion.

Plaintiff then claims NB pushed her down on a bench in the locker room and raped her.  (Id.; Pl. Dep. at 35-40.)

On September 29, 2003, the day of the alleged incident, Plaintiff did not report the incident to her parents or anyone at North Atlanta High School.  (School Defs.' SUF ¶ 10.)  The next evening, Plaintiff's mother noticed "passion marks" and other bruises on Plaintiff's neck and wrist.  (Id. ¶ 11.)  Plaintiff informed her mother that someone other than NB had caused the marks, and denied having sex with anyone.  (Id. ¶¶ 12-13.)  Plaintiff gave her mother NB's telephone number and Plaintiff's mother called NB to question him; NB denied causing the marks on Plaintiff's body but admitted he was Plaintiff's boyfriend.  (Id. ¶¶ 13-14.)  Plaintiff's mother did not believe Plaintiff or NB, and continued questioning Plaintiff about the marks.  Plaintiff finally told her mother and step-father that NB had raped her.  (Id. ¶¶ 17-18.)  Plaintiff's mother and step-father went to the police precinct to report the rape allegations.

When Plaintiff's mother and step-father arrived at the police precinct, the officer on duty called Defendant Green to the station to take a police report.

-4-

(Green Dep. at 15.)  After listening to Plaintiff's parents' allegations,[6] Defendant Green told them he worked at the school and would speak with school officials the next day.  (Id.)  The next morning, he reported Plaintiff's parents' allegations to Defendant Kinsey, and set up a meeting with school officials, Plaintiff and her mother at the school.  (Id. at 15-19.)  Defendant Green filed an offense report later that day, within twenty-four hours of learning of the incident.[7]  (City Defs.' Statement of Undisputed Facts ("SUF") ¶ 6.)

During the meeting at the school, Plaintiff's mother demanded that Defendant Kinsey investigate the matter and bring NB to the office so she could confront him.  (School Defs.' SUF ¶ 20.)  Although Defendant Kinsey did not allow Plaintiff's mother to confront NB, he told her he would "fully investigate what transpired and all of the accusations," and would inform Plaintiff and her parents of the results of his investigation.  (Kinsey Dep. at 29-33.)  After the meeting, because of the seriousness of the allegations, Defendant Kinsey contacted Defendant McWhorter

---

[6] Defendant Green claims Plaintiff Taylor denied that sexual intercourse was involved in the incident.

[7] Plaintiff claims Defendant Green filed this report only because of pressure applied by Plaintiff's mother.  (Pls.' Resp. to City Defs.' SUF ¶ 6.)

to ask him to conduct his own investigation.  (School Defs.' SUF ¶ 21; Kinsey

Dep. at 35-36; Green Dep. at 39-40.)

Defendant Kinsey also performed his own investigation of the alleged

incident.  Defendant Kinsey reviewed NB's attendance records which indicated NB

was not at school on the day of the alleged incident.  (School Defs.' SUF ¶ 22.)

Defendant Kinsey then interviewed NB's teachers who confirmed that NB did not

attend classes that day.  (Id. ¶¶ 22-23.)  Defendant Kinsey contacted NB's parents

who told him that NB was at home the day of the alleged incident because he was

sick, and that he did not leave the house that day.  (Id. ¶ 23.)  Defendant Kinsey

also reviewed footage from the school's security cameras, which provide coverage

for some of the areas near the locker room, but do not cover the locker room itself.

(Kinsey Dep. at 41.)  Defendant Kinsey did not observe anything in the footage to

support Plaintiff's allegations.  (Id. at 41-43.)  Defendant Kinsey gave all the

information he gathered to Defendant McWhorter.  (Id.)

On October 2, 2003, Defendant McWhorter began his investigation by

discussing the incident with Plaintiff.  (City Defs.' SUF ¶ 7.)  Defendant

McWhorter interviewed Plaintiff and her mother, and interviewed three friends of

Plaintiff's who Plaintiff's mother claimed could corroborate the allegations.

(McWhorter Dep. at 39.)  Defendant McWhorter also interviewed Defendant Young, and reviewed NB's attendance records to determine if NB was at school the day of the alleged incident.  (School Defs.' SUF ¶ 26.)  Defendant McWhorter then interviewed NB's father, with NB present at the interview.  (McWhorter Dep. at 67-72; City Defs.' SUF ¶ 7.)  NB's father told Defendant McWhorter that NB was sick on the day of the alleged incident and had stayed home from school. (School Defs.' SUF ¶ 27; McWhorter Dep. at 70-72.)  NB denied having sex with the Plaintiff.  (School Defs.' SUF ¶ 28.)

On November 18, 2003, after Defendant McWhorter completed his investigation, he presented all of the evidence to Assistant District Attorney Shannon Hayes.[8]  (School Defs.' SUF ¶ 29.)  Ms. Hayes concluded there was insufficient evidence to prosecute NB, and issued a "Decline to Prosecute Memorandum," stating she had reviewed the information provided by Detective McWhorter which was "very thorough -- everything present."  (Id.; see also Decline to Prosecute Memo., attached as Ex. B to City Defs.' Mot. for Summ. J.)

---

[8]  His report did not include the results of testing from the crime lab, or DNA testing results.  (Pls.' Resp. to City Defs.' SUF ¶ 8; McWhorter Dep. at 84-85.)

On March 15, 2004, Defendant McWhorter received results from testing of clothes initially gathered by investigators in the case, which indicated the presence of spermatozoa.  (McWhorter Dep. at 76-78.)  He then requested a blood sample from NB to compare NB's DNA with the spermatozoa found on the clothing, and NB acquiesced and provided a sample.[9]  (Id. at 74-79.)  On March 17, 2004, Defendant McWhorter contacted Ms. Hayes to inform her that he had preliminary results from the testing of evidence, indicating that intercourse had occurred.  (See McWhorter Dep. at 86.)  Before this call, the case had been transferred to District Attorney Brad Boyd, the District Attorney assigned to Fulton County Juvenile Court.  (Id. at 87.)  Defendant McWhorter discussed the case with Mr. Boyd, and Mr. Boyd did not indicate to Defendant McWhorter whether he planned to prosecute.  (Id.; City Defs.' SUF ¶ 12.)

---

[9]  The results of the follow-up testing suggest the spermatozoa were actually from Plaintiff's mother's undergarments, which Plaintiff's mother had included in the clothing provided to investigators, because it was negative for both Plaintiff's and NB's DNA.  (McWhorter Dep. at 81-82.)  Defendant McWhorter resubmitted the evidence for testing of other clothing, but as of Defendant McWhorter's deposition the other undergarments submitted for testing had not yet been tested.  The record is not clear regarding the results of this testing.  Thus, the Court is unaware of any physical evidence confirming Plaintiff had intercourse with NB.

Plaintiff also claims that after the alleged incident, NB harassed her by following her on three or four occasions, asking her to talk to him, and "kind of like pushed" her once in the hallway.  (School Defs.' SUF ¶¶ 30-31; Pl. Dep. at 8.)  Plaintiff and her mother reported the alleged pushing to school officials and to Defendant McWhorter.  (School Defs.' SUF ¶ 31.)  Defendant Young forwarded the complaint to the Atlanta Public Schools' Office of Internal Resolution, which is responsible for investigating violations of the school's policies and regulations, and to Defendant McWhorter.  (Id. ¶¶ 32-33.)

On October 27, 2003, Defendant McWhorter spoke with Plaintiff about the alleged pushing incident, and Plaintiff informed him that another student had witnessed the incident.  (Id. ¶¶ 33-34.)  Defendant McWhorter interviewed the alleged witness, who told him that he had not seen NB push Plaintiff.  (Id.)  Defendant McWhorter also investigated Plaintiff's claim that NB was harassing her by stalking her at school.  He interviewed Plaintiff and NB, and determined that NB had entered a classroom while Plaintiff was present, and then turned around and walked out without saying anything to her.  (Id. ¶¶ 35-36.)  Although Defendant McWhorter determined NB had not harassed Plaintiff, the school's Office of Internal Resolution met with NB to review the school's code of conduct and

harassment policy with him.  (Id. ¶ 38.)  The Office of Internal Resolution informed

Plaintiff's mother of the results of its investigation and the actions taken in response

to Plaintiff's complaints.  (Id. ¶ 39.)

On or around March 15, 2004, Plaintiff's mother held a demonstration in

front of the school, along with two other individuals, for eight hours by holding

signs stating that NB had raped Plaintiff.[10]  (School Defs.' SUF ¶ 40.)  Plaintiff

Taylor claims Defendant Kinsey threatened to call the police to have the

demonstrators removed, but officers told him that nothing could be done because

Plaintiff Taylor was not on school property.  (Pls.' Resp. to City Defs.' Mot. for

Summ. J. at 7.)  No person attempted to remove Plaintiff Taylor or her fellow

demonstrators from the sidewalk or interrupted her demonstration.  (School Defs.'

SUF ¶ 41.)  Defendants Young and Kinsey took a picture of Plaintiff Taylor

demonstrating.  Defendant Young also called Plaintiff to her office to determine if

the demonstration upset her and to discuss the demonstration generally.  (Id. ¶¶ 42-

_____

[10]  Plaintiff's mother brings a claim on her own behalf for Defendants'
alleged violation of her First Amendment rights.  The Court will refer to Plaintiff's
mother as "Plaintiff Taylor" when discussing her claim, and will occasionally refer
to Plaintiff Taylor and Plaintiff collectively as "Plaintiffs" when discussing their
arguments.

43.)  Plaintiff did not feel intimidated by Defendant Young during their discussion regarding her mother's demonstration.  (Id. ¶ 45.)  After the demonstration, Plaintiff's mother withdrew Plaintiff from the school.  (Id.)

Plaintiff Beverly Taylor brings this action individually and as next best friend of her daughter, CMC.  Plaintiff brings three claims against the City Defendants. Plaintiff's first claim is for denial of Plaintiff's due process and equal protection rights resulting from the City Defendants' alleged policy or practice of failing to report or investigate claims of rape.[11]  Plaintiff's second claim is for denial of Plaintiff's due process and equal protection rights resulting from Defendant Green's failure to protect students at North Atlanta high school from a "known hazard that being the malicious and criminal conduct of a group or gang within the school."  (Compl. ¶ 45.)  Plaintiff's second claim is also based on Defendant Green's alleged failure to file a proper police report on the rape or to investigate "in a timely fashion," and for his alleged failure "to protect [Plaintiff] after the rape from intimidation and harassment by the rapist."  (Id. ¶¶ 46, 48.)  Plaintiff's third

---

[11]  The constitutional deprivation claims asserted by Plaintiff are not clearly articulated.  Having studied all of the submissions of all of the parties, the Court concludes the claims it describes are those Plaintiff seeks to pursue.

claim is for denial of Plaintiff's equal protection and due process rights, and is based on Defendant McWhorter's alleged refusal to investigate the alleged rape. Plaintiff claims Defendant McWhorter, as part of a policy and practice, "actively interfered with and prevented the investigation of Plaintiff's rapist." (Id. ¶ 53.)

Plaintiffs also bring three claims against the School Defendants. These claims are based on the School Defendants' (i) alleged negligence stemming from their failure to warn Plaintiff of the school's violence and rape problems, failure to supervise students, and failure to protect Plaintiff from harassment after the alleged rape, (Compl. ¶¶ 56-68); (ii) alleged unlawful interference with Plaintiff Taylor's First Amendment right to demonstrate, in violation of 42 U.S.C. § 1983, (id. ¶¶ 69-70); and (iii) alleged failure to protect Plaintiff from sexual harassment after the alleged rape which denied Plaintiff equal access to education under Title IX. (Id. ¶¶ 71-74.) Plaintiffs seek compensatory damages, punitive damages and attorneys' fees.

**II.    DISCUSSION**

>  A.    Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial. Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor. United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555, 1558 (11th Cir. 1990). "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury . . . ." Graham, 193 F.3d at 1282. "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246.

-**13**-

But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B.     City Defendants' Motion for Summary Judgment

The City Defendants[12] move for summary judgment on all claims asserted against them.[13]  They claim (i) Plaintiff failed to identify any municipal policy or custom which violates Plaintiff's constitutional rights, (ii) there is no link between any policy or custom and the alleged constitutional deprivations, and (iii) there is no special relationship between the state and Plaintiff which required the state to protect Plaintiff from private actors.

─────────────────

[12]  The City of Atlanta Police Department is not a proper party to this action. See Shelby v. City of Atlanta, 578 F. Supp. 1368, 1370 (N.D. Ga. 1981) (holding "the Atlanta Police Department is not an entity subject to suit . . ."). However, Defendant Atlanta Police Department has chosen to construe the claims asserted against it as being asserted against the City of Atlanta. (City Defs.' Mot. for Summ. J. at 13.)

[13]  On January 31, 2005, the City Defendants filed their first Motion for Summary Judgment [23].  Subsequently, the Court re-opened discovery to allow the parties to take additional depositions.  On June 15, 2005, the City Defendants renewed their original Motion for Summary Judgment, adding only citations to new evidence of record.

-14-

1.    *City Defendants' Alleged Policy and Practice of Under-Reporting Rape Allegations*

Plaintiff first claims the Defendant City of Atlanta had a policy or practice of under-reporting and failing to investigate rape allegations, and that this policy or practice violated Plaintiff's equal protection and due process rights.  (Compl. ¶¶ 38-41.)  In support of its claim against the City Defendants, Plaintiff argues that a 2004 report produced by the City, titled "Fragile Momentum," demonstrates "that beginning in 1996 a concerted effort was made to reduce reported crime to improve Atlanta's selection for the 1996 Olympics . . . ," and that there are indications that the amount of crime occurring in Atlanta is higher than had been recorded by the City.  (Pls.' Resp. to City Defs.' Mot. for Summ. J. at 9-10.)  Plaintiff also cites to an April 2, 2005 newspaper article which claims the Atlanta Police Department is being investigated for under-reporting rapes in Atlanta.  (Id. at 10.)  Plaintiff claims that, "true to a well[-]established policy and or custom within the Atlanta Police Department, Detective McWhorter closed the case out as fast as he possibly could with no serious investigation and no serious attempt to even discover the facts." (Id. at 10.)  Plaintiff also claims that Defendant Green was reprimanded for filing his police report about the alleged incident in an untimely fashion, but this reprimand

-15-

was reversed upon review.  (Id. at 8.)  Plaintiff argues "When this same policy is

used in the school to down play crime rates it allows the type of violence that is so

prevalent in North Atlanta High School.  This in turn ca[u]ses fear or concerns in

[Plaintiff] that she was deprived of her right to an education."  (Id. at 11.)

Section 1983 provides a cause of action for persons who have been

"depriv[ed] of any rights, privileges, or immunities secured by the Constitution and

laws" of the United States by a person or entity acting under color of state law.  42

U.S.C. § 1983.  Here, it is undisputed that none of the City Defendants participated

in the alleged rape.  Therefore, to establish the City's liability for an alleged

violation of Plaintiff's constitutional rights, Plaintiff must establish the injuries were

inflicted pursuant to an official policy or custom of the municipality.  See Monell v.

Dep't of Soc. Servs., 436 U.S. 658, 677 (1978).

Assuming Plaintiff can establish a policy or custom of under-reporting rape

allegations,[14] such policy or custom cannot be the basis of a § 1983 claim against

the City Defendants.  "[I]t is not enough for a § 1983 plaintiff merely to identify

_____

[14]  Viewing the evidence in the light most favorable to Plaintiff, the Court
expresses serious doubt whether Plaintiff has established the City has a policy or
custom of under-reporting rape allegations, and there is no evidence in the record
relating any alleged under-reporting to the under-reporting of crime in schools.

conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged."  <u>Board of County Comm'rs v. Brown</u>, 520 U.S. 397, 404 (1997).  "A § 1983 claim requires proof of an affirmative causal connection between the defendant's acts or omissions and the alleged constitutional deprivation."  <u>Troupe v. Sarasota County</u>, 419 F.3d 1160, 1165 (11th Cir. 2005); <u>see also</u> <u>Dixon v. Burke County</u>, 303 F.3d 1271, 1274 (11th Cir. 2002) (Section 1983 plaintiff "must establish an adequate causal link between the alleged harm and the alleged unlawful conduct.").

Here, the policy or custom identified by Plaintiff as the basis for § 1983 liability is the City's alleged under-reporting of rape allegations, and failure to investigate adequately Plaintiff's particular allegation.[15]  Plaintiff's claimed injury is that Plaintiff was raped by her boyfriend on school property.  Whether the City Defendants under-reported rape allegations in the City generally, or failed to

---

[15]  Plaintiff questions the thoroughness of the City Defendants' investigation of her allegations.  However, the undisputed facts of this case are that the City Defendants interviewed witnesses, reviewed school files, collected evidence, and presented their findings to a District Attorney who declined to prosecute the alleged assailant.

investigate adequately Plaintiff's allegations in this case, the City's policy did not cause Plaintiff's harm.[16]   There is no evidence of this policy-harm relationship and it is difficult even to identify an allegation linking reporting to the alleged injury in question.   The undisputed facts of this case demonstrate Plaintiff has not, and cannot, establish a nexus between the alleged deprivation of Plaintiff's federal rights and the City Defendants' alleged unlawful conduct, and summary judgment for the City Defendants is appropriate on this claim.   See Dixon, 303 F.3d at 1275 ("Without causation, [Plaintiff]'s § 1983 case fails as a matter of law.").

> 2.   *Defendant Green's Alleged Failure to Protect Plaintiff and to File a Proper Police Report and Defendant McWhorter's Alleged Failure to Report the Rape and Interference with its Investigation and Prosecution*

Plaintiff's second cause of action alleges Defendant Green violated Plaintiff's equal protection and due process rights by:  (i) failing to supervise the students by

---

[16]  To the extent Plaintiff is claiming the deprivation of a right to education, Plaintiff also does not show the required nexus.  Plaintiff states "When this same policy [of under-reporting and investigating rapes] is used in the school to down play crime rates it allows the type of violence that is so prevalent in North Atlanta High School.  This in turn cases [sic] fear or concerns in [Plaintiff] that she was deprived of her right to an education."  (Pls.' Resp. to City Defs.' Mot. for Summ. J. at 11.)  Plaintiff has not identified unlawful conduct by the City Defendants which caused a deprivation of Plaintiff's federal rights.  Importantly, there is no factual basis for this broad conclusion asserted by Plaintiff.

allowing students to leave or come onto campus; (ii) "fail[ing] to protect the students at North Atlanta High School from a known hazard that being the malicious and criminal conduct of a group or gang within the school"; (iii) "refus[ing] to file a proper police report on the rape in a timely fashion or to institute an investigation; and (iv) failing to protect the Plaintiff after the rape from intimidation and harassment. (Compl. ¶¶ 42-49.) Similarly, Plaintiff's third cause of action alleges Defendant McWhorter[17] violated Plaintiff's equal protection and due process rights by failing to report, investigate and prosecute the alleged rape, and "refusing to turn over the file to the District Attorney in a timely fashion for prosecution." (Id. ¶¶ 50-55.) Plaintiff further claims the school has a "history of violence and has at least two gang [sic] operating within it. They have a wooded area that the students are allowed to leave campus without signing out and go to what is in essence a party area to party during school time. Defendant's [sic] Green and McWhorter turn their head and say it is not my job, even though both

_____

[17] To the extent Plaintiff claims Defendants Green and McWhorter are also liable as employees of the school district for the same reasons the School Defendants are liable, (see Pls.' Resp. to City Defs.' Mot. for Summ. J. at 12), the Court's analysis of the School Defendants' liability in section II.C, *infra*, is applicable to these Defendants.

are certified law enforcement officers."  (Pls.' Resp. to City Defs.' Mot. for

Summ. J. at 15.)

Plaintiff does not clearly articulate the particular rights at issue or the

particular conduct which allegedly violated these rights.  For purposes of analysis,

the Court will separate the allegations into two categories:  (1) pre-incident conduct,

including failure to protect Plaintiff or supervise the students, and (2) post-incident

conduct, including failure to investigate, prosecute and protect Plaintiff from

harassment.

The pre-incident conduct complained of by Plaintiff fails to establish a claim

against the City Defendants because (i) the record evidence demonstrates the City

Defendants did not fail to protect Plaintiff from a "known hazard," and (ii) the City

Defendants did not have a duty to protect her.  Plaintiff claims the record evidence

demonstrates the school has a "history of violence," "at least two gang[s] operating

within it," and a dangerous wooded area off campus.  However, Plaintiff does not

in any way provide a nexus between these alleged "known hazards" and Plaintiff's

alleged rape by her boyfriend in the locker room.  These generalized allegations of

danger cannot provide a basis for liability in this case.  See generally Doe v.

Hillsboro Indep. Sch. Dist., 113 F.3d 1412, 1415 (5th Cir. 1997) ("Such post hoc

attribution of known danger would turn inside out this limited [state-created-danger] exception to the principle of no duty.").

Even if Plaintiff could demonstrate the City Defendants failed to protect Plaintiff, her claim fails because the City Defendants did not have a duty to protect her. Plaintiff acknowledges that, "as a general rule of law," the City Defendants did not have a duty to protect the Plaintiff. (Pls.' Resp. to City Defs.' Mot. for Summ. J. at 13.) However, Plaintiff argues that this case can be distinguished from those finding school officials do not have a duty to protect a student from other students because "[h]ere the school created a magnet program specifically for the intent of drawing students such as [Plaintiff] into the school knowing that the school itself was a violent and dangerous place without giving any warning to [Plaintiff] or her parents. Therefore the school had an affirmative duty to warn [Plaintiff] and her parents of the known dangers before enrolling her in the magnet program." (Pls.' Resp. to City Defs.' Mot. for Summ. J. at 13.) Plaintiff's argument is not persuasive.

That the school district created the magnet program does not impose a duty on the school officials to protect the Plaintiff. "Generally a person does not have a constitutional right under the Fourteenth Amendment to be protected from the

criminal acts of third parties." <u>Mitchell v. Duval County Sch. Bd.</u>, 107 F.3d 837, 838 (11th Cir. 1997).  Government officials cannot be held liable for substantive due process violations for their failure to protect victims from harm caused by third parties, unless the victim is in custody or the state's conduct is "arbitrary, or conscience shocking, in a constitutional sense, and that standard is to be narrowly interpreted and applied."[18] <u>White v. Lemacks</u>, 183 F.3d 1253, 1255-59 (11th Cir. 1999).  "[W]hen someone not in custody is harmed because too few resources were devoted to their safety and protection, that harm will seldom, if ever, be cognizable under the Due Process Clause." <u>Id.</u> at 1258.  "[T]he Supreme Court

---

[18]    The parties frame their arguments in terms of the law before <u>White v. Lemacks</u>, 183 F.3d 1253 (11th Cir. 1999).  Prior to <u>White</u>, government officials could be held liable for substantive due process violations "for their failure to protect victims from harm caused by third parties where the state had a special relationship with the victim, or where the state, through its affirmative acts, put the victim in special danger of harm." <u>Id.</u> at 1255 (quotation and citation omitted).  However, the <u>White</u> Court held that the "special relationship and special danger doctrines . . . are no longer good law . . . ," <u>id.</u> at 1259, and government officials "violate the substantive due process rights of individuals not in custody only when those officials cause harm by engaging in conduct that is arbitrary, or conscience shocking, in a constitutional sense, and that standard is to be narrowly interpreted and applied." <u>Id.</u>  Because <u>White</u> raises the bar which a plaintiff must clear to establish a constitutional violation, the Court will look to the Circuit's pre-<u>White</u> cases for guidance in this case.

has been reluctant to expand the concept of substantive due process, and . . .

judicial self-restraint requires courts to exercise the utmost care in this area." Id.

In Doe v. Hillsboro Independent School District, 113 F.3d at 1415, the Fifth

Circuit noted that every circuit court to address the issue has held that compulsory

attendance laws do not create a special, or custodial, relationship "giving rise to a

constitutionally rooted duty of school officials to protect students from private

actors." See Wyke v. Polk County Sch. Bd., 129 F.3d 560, 569 (11th Cir. 1997)

("Compulsory school attendance laws alone are not a restraint of personal liberty

sufficient to give rise to an affirmative duty of protection."). The Eleventh Circuit

has also explicitly rejected a constitutional duty to protect a student attending a

voluntary program at a school. See Mitchell, 107 F.3d at 838 (citing Wright v.

Lovin, 32 F.3d 538 (11th Cir. 1994); see also Wright, 32 F.3d at 540 ("To date,

every federal circuit court of appeal to address the question of whether compulsory

school attendance laws create the necessary custodial relationship between school

and student to give rise to a constitutional duty to protect students from harm by

non-state actors has rejected the existence of any such duty."). Applying the

controlling law of this Circuit, that Plaintiff was attending a magnet program at the

school did not create a custodial relationship such that government officials had a constitutional duty to protect Plaintiff from third-party harm.[19]

The City Defendants simply did not have a duty to protect Plaintiff and they can be liable for violating her substantive due process rights only if their conduct was arbitrary or conscience shocking.  Applying this standard narrowly, as the Eleventh Circuit requires, this Court necessarily concludes the City Defendants' conduct in this case was neither arbitrary nor conscience shocking.

Considering the alleged constitutional violations resulting from the City Defendants' post-incident conduct, the Court further finds Plaintiff cannot establish a claim against the City Defendants.  The undisputed facts of this case are that the City Defendants interviewed witnesses, reviewed school files, collected evidence, and presented their findings to a District Attorney who declined to prosecute the alleged assailant.  Plaintiff claims this investigation, without any credible evidentiary support, was inadequate.  The investigation, which any reasonable interpretation of the facts shows, was competent and appropriate.  The Court cannot conclude that

---

[19]  Plaintiff has not articulated, and has not asserted, a valid equal protection claim.  Although government officials have a duty not to discriminate in providing law-enforcement services, Plaintiff has not demonstrated intentional or purposeful discrimination.  See Wright v. City of Ozark, 715 F.2d 1513, 1516 (11th Cir. 1983).

-24-

the manner in which it was conducted even suggests Plaintiff's constitutional rights were violated. Even if the investigation was deficient, there simply is no nexus between Plaintiff's alleged constitutional injury and the investigation conducted.

Finally, the Court considers Plaintiff's claim that the City Defendants failed to protect Plaintiff from harassment after the alleged rape. This claim also fails because Plaintiff has not presented record evidence that Plaintiff was, in fact, harassed. Viewing the record in the light most favorable to Plaintiff, the record demonstrates a few minor instances of arguable harassment which cannot stand as the basis for a claim for violation of constitutional rights. Even if Plaintiff had presented sufficient evidence of harassment, the City Defendants did not have a duty to protect Plaintiff from it.

For the reasons stated above, the City Defendants are entitled to summary judgment on all of Plaintiff's claims.

C.    School Defendants' Motion for Summary Judgment

The School Defendants also move for summary judgment on all of the claims asserted against them by Plaintiffs. The School Defendants argue the Title IX claim fails because the School Defendants did not act with deliberate indifference to known acts of harassment and any harassment which did occur was

-25-

not sufficiently severe to be actionable.  They argue that Plaintiff Taylor's § 1983 claim for alleged violation of her First Amendment rights fails because there is no evidence her rights were violated, the individual defendants are entitled to qualified immunity and the school system is immune from § 1983 liability.  Finally, the School Defendants argue that Plaintiff's negligence claims fail because the School Defendants are entitled to sovereign or qualified immunity.

        1.    *Title IX Claim*

Plaintiff claims the School Defendants had a duty to provide a harassment-free atmosphere, and that the harassment which Plaintiff suffered denied her equal access to education in violation of Title IX.  Plaintiff specifically claims the School Defendants "allowed or fostered a policy of administrative indifference, turning one's head to avoid seeing the gang activity or the problems and allowing the school to become over run with violence, drugs and alcoholic activities and sexual misconduct."  (Pls.' Resp. to School Defs.' Mot. for Summ. J. at 12.)  The School Defendants argue Plaintiff's Title IX violation claim fails because (i) the School Defendants did not act with deliberate indifference to known acts of harassment and (ii) the alleged harassment was not sufficiently severe to be actionable under Title IX.

Title IX of the Education Amendments Act of 1972 ("Title IX") provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).  Title IX is enforceable through a private right of action for damages.  Franklin v. Gwinnett County Pub. Sch., 503 U.S. 60, 76 (1992).  To establish liability under Title IX for student-on-student harassment, a plaintiff must establish (i) the "funding recipient act[ed] with deliberate indifference to known acts of harassment in its programs or activities," and (2) the harassment was "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit."  Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 633 (1999); Hawkins v. Sarasota County Sch. Bd., 322 F.3d 1279, 1285 (11th Cir. 2003).

A plaintiff may demonstrate the school district's "deliberate indifference" to student-on-student harassment only where the school district's "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances."  Davis, 526 U.S. at 648.  "This is not a mere 'reasonableness' standard . . . .  In an appropriate case, there is no reason why courts, on a motion

-27-

to dismiss, for summary judgment, or for a directed verdict, could not identify a response as not 'clearly unreasonable' as a matter of law." Id. at 649.

The basis for Plaintiff's Title IX claim is that the School Defendants had a duty to provide a harassment-free environment in which Plaintiff could learn, that the "intimidation and harassment after the rape was so pervasive that the plaintiff could not maintain her grades," and she was, therefore, denied equal access to education in violation of Title IX. (Compl. ¶¶ 71-74.)  Plaintiff argues there is "no question" that the School Defendants "were well aware of the dangers posed at North Atlanta High School, and the tremendous degree of violence that occurred in that school on a daily basis.  Their actions or inactions can only be described as a conscious indifference."  (Pls.' Resp. to School Defs.' Mot. for Summ. J. at 15.)

Plaintiff's Title IX claims appear to be based on alleged harassment occurring after the alleged rape.[20]  The conduct which Plaintiff claims constituted

---

[20]  As discussed above, the School Defendants took numerous steps to investigate the alleged rape.  The School Defendants held a meeting with Plaintiff and her parents, brought in Defendant McWhorter, a police officer, to investigate, and Defendant Kinsey performed his own investigation by interviewing teachers, checking school records, interviewing the accused's father and reviewing security camera footage.  Defendant Kinsey forwarded his findings to the police officer investigating the allegations.  The School Defendants did not act with deliberate indifference in response to Plaintiff's rape allegation.  Furthermore, Plaintiff does

actionable harassment included NB allegedly following Plaintiff at school on three or four occasions, and allegedly pushing her once in the hallway.[21]  In response, the School Defendants notified Defendant McWhorter of Plaintiff's allegations, and Defendant McWhorter investigated the reports by speaking to Plaintiff and interviewing a person who Plaintiff reported was a witness to the alleged pushing incident.  Defendant McWhorter discovered the alleged "following" involved NB on one occasion entering a classroom which Plaintiff was in, and his prompt departure when he saw Plaintiff in the room.  The witness to the alleged pushing incident did not confirm that the incident had occurred.  The investigating detective, on these facts, determined that no harassment had occurred and informed the School Defendants of his finding.  In an abundance of caution, the school's Office

_____

not allege that any Defendants had knowledge prior to the incident that Plaintiff was in danger of being assaulted by her boyfriend.

[21]  "Whether gender-oriented conduct rises to the level of actionable harassment . . . depends on a constellation of surrounding circumstances, expectations, and relationships."  Davis, 526 U.S. at 651.  The Court will assume here for purposes of analysis that there is a genuine issue of material fact whether Plaintiff was effectively barred access to an educational opportunity or benefit, if there was actionable harassing conduct, on which the Court's analysis will focus. See id. at 652-53 (noting the possibility that a single instance of peer harassment could be serious enough to be actionable)

of Internal Resolutions met with NB to review the school's code of conduct and harassment policy, despite the investigation results.

In Sauls v. Pierce County School District, 399 F.3d 1279 (11th Cir. 2005), the Eleventh Circuit held the school district was not deliberately indifferent to alleged teacher-on-student harassment because each time school officials received a complaint, they responded by investigating, instituting corrective measures, and warning the alleged offender regarding his conduct. Sauls, 399 F.3d at 1285-87. The actions taken by the school officials in Sauls are similar to those taken by the School Defendants in the case here. Applying the criteria stated in Sauls, the Court concludes the School Defendants acted reasonably in response to the alleged harassment. Plaintiff has failed to demonstrate the School Defendants acted in a clearly unreasonable manner to the alleged student-on-student harassment, and the School Defendants are entitled to summary judgment on Plaintiff's Title IX claim. See Sauls, 399 F.3d at 1285-87; see generally Davis, 526 U.S. at 648 ("[C]ourts should refrain from second-guessing the disciplinary decisions made by school administrators.").

2.      *Section 1983 claim for violation of First Amendment rights*

Plaintiff Taylor argues "the actions of Delphia Young and Larry Kinsey in intimidating, harassing and interfering with the plaintiff's peaceful and legitimate protest constitutes the violation of the plaintiff's guaranteed rights of freedom of speech pursuant to the First Amendment." (Compl. ¶ 70.)  The alleged interference consisted of (i) Defendant Kinsey allegedly attempting to have Plaintiff Taylor arrested, even though "the police officers present informed him that there was no crime committed and refused to follow his request," (Pl. Dep. at 20), (ii) the School Defendants taking pictures of Plaintiff Taylor while she was protesting, and (iii) Defendant Young taking Plaintiff out of her class to question her about what Plaintiff Taylor was doing.  (Pls.' Resp. to School Defs.' Mot. for Summ. J. at 17.)  Based on this conduct, Plaintiff Taylor asserts a claim under 42 U.S.C. § 1983 for the alleged violation of her First Amendment right to protest.

The School Defendants argue Plaintiff Taylor's § 1983 claim must be dismissed because there is no evidence her First Amendment rights were violated, the individual School Defendants are entitled to qualified immunity, and the school system is immune from § 1983 liability.

Plaintiff Taylor does not dispute that the individual school officials were acting within their discretionary authority, and the Court's independent review of their actions demonstrates they were acting in their discretionary authority when they responded to a protest directed at persons at the school and which occurred near the school grounds.  On these undisputed facts, Defendants Kinsey and Young are entitled to qualified immunity unless Plaintiffs demonstrate Defendants' conduct "violated a constitutional right," and "the right was clearly established." See Bennett v. Hendrix, 423 F.3d 1247, 1250 (11th Cir. 2005).

The Court agrees with the School Defendants that Plaintiff Taylor has not alleged a violation of her First Amendment rights.  Bennett is persuasive authority. In Bennett, 423 F.3d at 1254, the Eleventh Circuit held "[a] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights."  Finding the governmental action chilled plaintiffs' exercise of First Amendment rights, the Bennett Court noted the police officers conducted a "prolonged and organized campaign of harassment," "followed, pulled over, cited, intimidated, or otherwise harassed the plaintiffs," "accessed confidential government databases containing information on the plaintiffs, attempted to obtain arrest warrants against the

-32-

plaintiffs without probable cause, and produced and mailed to . . . County residents flyers depicting the plaintiffs as criminals terrorizing the county."  Id. at 1254-55. Plaintiffs in Bennett testified that they were chilled in the exercise of their rights.  Id.

Bennett instructs that the School Defendants' conduct is not sufficient to establish a violation of Plaintiff Taylor's First Amendment rights.  Plaintiff's testimony is that Defendant Kinsey threatened to call the police, asked the police officers about arresting Plaintiff Taylor, and that the police officers did not attempt to arrest her.  (Pl. Dep. at 19-22.)  These events cannot be said to have the effect of deterring a person of ordinary firmness from the exercise of First Amendment rights, and, in fact, did not deter Plaintiff Taylor.  Plaintiff Taylor does not contend she was denied her right to protest in front of the school; in fact, she demonstrated for more than eight hours.  (Pl. Dep. at 20.)

Similarly, that Defendants Kinsey and Young allegedly took pictures of Plaintiff Taylor while she was protesting is not a violation of Plaintiff Taylor's First Amendment right to protest.  Plaintiff Taylor does not claim the School Defendants used these photographs to intimidate or harass her, and there is no allegation that Defendants acted in any way other than to document the events of the day, and

certainly did not chill the exercise of Plaintiff Taylor's rights.[22]  Finally, that

Defendant Young called Plaintiff to her office during her mother's protest is not a

violation of Plaintiff Taylor's First Amendment rights.  Plaintiff testified Defendant

Young discussed with her why her mother was protesting to see if she was upset

about the protest.  Plaintiff stated she did not get the sense that Defendant Young

was being mean to her.  (Pl. Dep. at 18-19.)  That school officials were concerned

about Plaintiff's well-being is reasonable.  Even assuming Plaintiff Taylor's First

Amendment rights were clearly established, Plaintiff's allegations, viewed

individually or in the aggregate, are insufficient to show Plaintiff Taylor's First

Amendment rights were infringed or chilled.  The Court finds there was no violation

of Plaintiff Taylor's First Amendment rights and entry of summary judgment is

appropriate on this claim.

Even if Plaintiff Taylor could establish that Defendants Kinsey and Young

violated her First Amendment rights, she has not alleged, let alone presented any

evidence to support, a § 1983 claim against the Atlanta Independent School

---

[22]  Considering the comments made by Plaintiff Taylor in her protest, it is reasonable that Defendants would want a record of the protest, including a visual one, to respond to complaints by NB or his parents that the protest should have been interrupted.

System.  "[A] local government may not be sued under § 1983 for an injury

inflicted solely by its employees or agents.  Instead, it is when execution of a

government's policy or custom, whether made by its lawmakers or by those whose

edicts or acts may fairly be said to represent official policy, inflicts the injury that

the government as an entity is responsible under § 1983."  <u>Monell</u>, 436 U.S. at 694.

"[M]unicipal liability may be imposed for a single decision by municipal

policymakers under appropriate circumstances."  <u>Scala v. City of Winter Park</u>, 116

F.3d 1396, 1399 (11th Cir. 1997) (quoting <u>Pembaur v. City of Cincinnati</u>, 475 U.S.

469, 480 (1986)).  Because it is undisputed that Defendants Kinsey and Young are

not municipal policymakers[23], to establish her § 1983 claim against the Atlanta

Board of Education, Plaintiff Taylor must demonstrate that an official government

policy or custom caused the violation of her First Amendment rights.  Plaintiff

Taylor simply has not offered any evidence of, nor even attempted to identify, an

official policy or custom of interfering with a protestor's First Amendment rights,

---

[23]  Plaintiff does not argue that Defendants Kinsey and Young are municipal
policymakers, and states that "[t]he Atlanta Board of Education is a governing
authority for the public schools for the City of Atlanta . . . ."  (Compl. ¶ 7.)

and Plaintiff's § 1983 claim against the Defendant Atlanta Board of Education must be dismissed for this reason.

      3.    *Failure to protect, warn and supervise claim*

Plaintiff claims that the School Defendants "did not warn the Plaintiff of the known dangers of the North Atlanta High School," that Defendant Young and Kinsey had a "duty to supervise" the conduct of students but "refused to properly supervise" them, and that Defendants Young and Kinsey failed to protect Plaintiff. (Compl. ¶¶ 56-68.)  Although not stated with precision, the Court assumes Plaintiff's claim sounds in negligence.[24]

_____

[24]  To the extent Plaintiff is asserting a § 1983 cause of action against the School Defendants based on these allegations, (see Compl. ¶ 68 (alleging violation of Plaintiff's Fourth and Fourteenth Amendment rights)), such action against the Atlanta Public School System fails because, as discussed above, Plaintiff cannot demonstrate the School Defendants were deliberately indifferent to the claimed harassment.  See Sauls, 399 F.3d at 1287-88 (applying same deliberate indifference standard to claims under Title IX and § 1983 and finding both claims failed because plaintiff could not establish school district acted with deliberate indifference). Section 1983 claims against the School Defendants would also fail because the School Defendants did not have a constitutional obligation to protect the Plaintiff from private-party violence.  See section II.B.2, *supra*; see also Wright v. Lovin, 32 F.3d at 540-41 (holding school officials did not have a constitutional duty to protect a student from non-state actors).

The School Defendants argue Plaintiff's negligence claims fail because the individual School Defendants are entitled to qualified immunity and the school system is entitled to sovereign immunity.  Plaintiff does not contest these arguments, and apparently has abandoned her negligence claims.  (See Pls.' Resp. to Def.'s Mot. for Summ. J.)  Accordingly, the School Defendants are entitled to summary judgment on Plaintiff's negligence claims.

Assuming for the purpose of analysis that Plaintiff did not abandon her negligence claims and the School Defendants failed in some duty to Plaintiff, the Court agrees that Plaintiff's negligence claims are barred by sovereign and qualified immunity.  The individual School Defendants were clearly performing discretionary functions in supervising the students.  See Kelly v. Lewis, 471 S.E.2d 583, 586 (Ga. Ct. App. 1996) ("[M]aking decisions requiring the means used to supervise school children is a discretionary function of a school principal, and . . . the teachers' task to monitor, supervise, and control students is a discretionary action protected by the doctrine of official immunity.").  Because Plaintiff has not alleged, let alone produced evidence, that the individual School Defendants acted with malice or intent to cause injury, Plaintiff's negligence claims against the individual School Defendants must be dismissed.  See id.

-37-

Similarly, Plaintiff has not alleged nor produced any evidence that the Defendant Independent School System waived its sovereign immunity, and Plaintiff's negligence claims against it are therefore barred.  See Davis v. Dublin City Bd. of Educ., 464 S.E.2d 251, 252 (Ga. Ct. App. 1995) ("The 1991 constitutional amendment extending sovereign immunity to the state and all of its departments and agencies includes school boards . . . ." (quotation and citation omitted)).  Viewing the facts in the light most favorable to Plaintiff, the School Defendants are entitled to summary judgment on Plaintiff's negligence claims.

## III.    CONCLUSION

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendants Atlanta Board of Education, Delphia Young and Larry Kinsey's Motion for Summary Judgment [32] and Defendants City of Atlanta Police Department, W. I. Green and Brad McWhorter's Renewed Motion for Summary Judgment [38] are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Extension of Time [40] is **GRANTED** *nunc pro tunc*.

**SO ORDERED**, this 7th day of February, 2006.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE